

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

October 4, 2024

**BY ECF**

The Honorable Paul A. Engelmayer
United States District Judge
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

      Re:     *United States v. Omar Khan*, 20 Cr. 117 (PAE)

Dear Judge Engelmayer:

      The Government respectfully submits this letter in the above-captioned matter in opposition to defendant Omar Khan's *pro se* motion for compassionate release, pursuant to 18 U.S.C. § 3582(c)(1)(A) (Dkt. No. 40 ("Mot.")).  Khan's motion fails on multiple grounds.

### I.     Factual and Procedural Background

#### A.  Khan's Fraud Scheme

      As detailed in the Presentence Investigation Report ("PSR"), and discussed at the sentencing proceeding, from approximately 2015 through 2019, Khan engaged in a fraud scheme focused on soliciting investments for wine tasting and networking events.  During the scheme, Khan invited wealthy and successful individuals to a series of events involving wine tasting, fancy dinners, and networking.  At these events, Khan recruited high net worth victims to invest in a series of purported ventures revolving around wine dinner events, including Khan's wine events business.  Khan failed to return principal investments or pay out profits for these investments; he lied to investors; and he appears to have stolen millions of dollars for his own personal use.  Law enforcement has identified at least a dozen victims of Khan's fraud scheme.  Altogether, through the scheme, approximately US$9.5 million of investor funds were paid to Khan, and the vast majority of investors did not receive any repayment.  In addition, Khan impersonated his own attorney in emails to victims of the fraudulent scheme in order to promote and conceal the scheme.

      Upon learning of a criminal investigation, which was reported in the *New York Post* in September 2019, Khan fled to Sri Lanka, where he remained until he was expelled from that country and returned to the United States earlier this year.

Honorable Paul A. Engelmayer
October 4, 2024
Page 2

### B.  Khan's Sentencing

After his arrest earlier this year, Khan quickly pled guilty to Count Two of the Superseding Indictment, which charged him with Aggravated Identity Theft, in violation of 18 U.S.C. § 1028A.

On June 10, 2024, the Court sentenced Khan to the mandatory sentence of two years' imprisonment.  At the sentencing, the Court remarked that the plea was generous and resulted in a "low" sentence in light of the conduct.

### C.  Khan's Motion

On July 28, 2024—just one month after the Court imposed sentence—Khan requested the Federal Bureau of Prisons ("BOP") to make a compassionate release motion on his behalf.  Khan's request was based on the purported need to care for his mother.

The BOP denied Khan's request on August 20, 2024.  It does not appear that Khan appealed administratively.

## II.    Khan's Motion Should Be Denied

Khan's motion should be denied for multiple reasons.  As an initial matter, he has not demonstrated any extraordinary and compelling reasons for early release.  In any event, granting release now, or at any point during Khan's two-year sentence, would be inconsistent with the purpose of this Court's sentence and the sentencing factors more broadly.

### A.  Legal Standard

Under 18 U.S.C. § 3582, as amended by the First Step Act, the Court "may not modify a term of imprisonment once it has been imposed," except that:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

Honorable Paul A. Engelmayer
October 4, 2024
Page 3

18 U.S.C. § 3582(c)(1)(A)(i).

Accordingly, a defendant seeking a reduction in sentence must first request such a reduction from the warden of the facility in which he is housed. This exhaustion requirement is a mandatory claim-processing rule, *see United States v. Saladino*, 7 F.4th 120, 124 (2d Cir. 2021), and as such a defendant's failure to exhaust is not subject to judicial excusal, *see Ross v. Blake*, 578 U.S. 632, 638-39 (2016) ("[M]andatory exhaustion statutes . . . establish mandatory exhaustion regimes, foreclosing judicial discretion" to waive their requirements.); *accord United States v. Ogarro*, No. 18 Cr. 373 (RJS), 2020 WL 1876300, at *5 (S.D.N.Y. Apr. 14, 2020) (concluding court may not waive Section 3582(c)(1)(A)(i)'s exhaustion requirement).

Where a defendant has exhausted his administrative remedies, a court may reduce the defendant's sentence if it finds that (1) "extraordinary and compelling reasons warrant such a reduction"; (2) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission"; and (3) the Section 3553(a) factors weigh in favor of a reduction in sentence. 18 U.S.C. § 3582(c)(1)(A); *see United States v. Keitt*, 21 F.4th 67, 71 (2d Cir. 2021) (recognizing that both "extraordinary and compelling reasons" and support of Section 3553(a) factors are necessary to grant relief). "Application of the § 3553(a) factors requires an assessment of whether the relevant factors outweigh the extraordinary and compelling reasons warranting [a sentence reduction] . . . and whether [a sentence reduction] would undermine the goals of the original sentence." *United States v. Daugerdas*, 613 F. Supp. 3d 807, 812 (S.D.N.Y. 2020).

The relevant Sentencing Guidelines policy statement is Section 1B1.13 and is no longer advisory; it now sets forth binding requirements that must be met before a court can reduce a sentence. *See* 18 U.S.C. § 3582(c)(1)(A) (requiring reduction in sentence to be "consistent with applicable policy statements issued by the Sentencing Commission").[1] Section 1B1.13 both defines "extraordinary and compelling reasons" and imposes an additional requirement that the defendant not be "a danger to the safety of any other person or to the community" as determined under the Bail Reform Act. *See* U.S.S.G. §§ 1B1.13(a)(2), (b).

The policy statement provides, in relevant part:

Extraordinary and compelling reasons exist under any of the following circumstances or a combination thereof:

(5)  Other Reasons.—The defendant presents any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4) [medical circumstances of the defendant, age of the defendant, family circumstances of the defendant,

---

[1] A prior version of Section 1B1.13 was held to be outdated and therefore non-binding on courts after passage of the First Step Act of 2018. *See United States v. Brooker*, 976 F.3d 228, 236 (2d Cir. 2020). Section 1B1.13 was amended as of November 1, 2023, however, so as to fix the issue identified in *Brooker*, among other changes. Accordingly, *Brooker* has been abrogated, and the policy statement is once again binding on courts considering reduction in sentence motions.

Honorable Paul A. Engelmayer
October 4, 2024
Page 4

victim of abuse], are similar in gravity to those described in paragraphs (1) through (4).

(6)     <u>Unusually Long Sentence</u>.—If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

U.S.S.G. § 1B1.13(b).

Rehabilitation of the defendant is not itself an extraordinary and compelling reason for a reduction in sentence, 28 U.S.C. § 994(t), but it may be considered in combination with other circumstances in determining whether and to what extent a reduction in sentence is warranted, U.S.S.G. § 1B1.13(d).

As the proponent of the motion, the defendant bears the burden of proving each of the four requirements for relief: exhaustion, extraordinary and compelling reasons, lack of danger to the community, and support of the Section 3553(a) factors.  *See United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992) ("A party with an affirmative goal and presumptive access to proof on a given issue normally has the burden of proof as to that issue."); *accord, e.g.*, *United States v. Ebbers*, 432 F. Supp. 3d 421, 426-27 (S.D.N.Y. 2020); *United States v. Givens*, No. 14 Cr. 546-09 (CM), 2020 WL 4699042, at *2 (S.D.N.Y. Aug. 13, 2020).

**B.  Khan Has Not Shown an Extraordinary and Compelling Reason for Release**

As an initial matter, there is at least some question whether Khan failed to exhaust administrative remedies by failing to appeal the denial of his request to the BOP regional director. While some courts have recognized that similar circumstances can constitute a failure to exhaust administrative remedies, *see United States v. Saladino*, 7 F.4th 120, 123-24 (2d Cir. 2021) (citing *United States v. Samuels*, No. 08 Cr. 789-6 (RJS), 2020 WL 7696004, at *3 (S.D.N.Y. Dec. 28, 2020)), the Government is not relying on that as a basis to find non-exhaustion here, and Khan's motion fails in any event.

Khan rests his motion on the ground that his mother is elderly and allegedly suffering from declining health (high blood pressure, anxiety, arthritis, and high cholesterol), and he could serve as their caregiver.  Khan claims, without much explanation, that he is the only person who is able to care for his mother.

While the need to care for one's parent "may, in certain circumstances, warrant a finding that an extraordinary and compelling reason exists," the Guidelines require "[t]he incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent."

Honorable Paul A. Engelmayer
October 4, 2024
Page 5

U.S.S.G. § 1B1.13(b)(3)(C). Moreover, courts "generally require a showing of evidence from several sources indicating that the defendant is the only available caregiver for a family member in dire conditions." *United States v. Lindsey*, No. 13 Cr. 271 (LTS), 2021 WL 37688, at *3 (S.D.N.Y. Jan. 4, 2021) (citations and internal quotation marks omitted).

Here, while the Government is sympathetic to the desire to see and assist in the care of an elderly parent, Khan—who bears the burden on his motion—offers no evidence whatsoever that his mother is incapacitated. To the contrary, the defendant submitted a lucid and well-written letter from his aging mother. Moreover, Khan fails to explain why he is the only possible caregiver and why someone else, such as his spouse, is not capable of caring for his mother. *See United States v. Myrick*, No. 12 Cr. 385 (ARR), 2020 WL 6128943, at *4–5 (E.D.N.Y. Oct. 19, 2020) ("Courts in this circuit have repeatedly found that similar challenging circumstances do not warrant release when the caretaker is not truly incapacitated, or when there may be other family members available to care for the children." (collecting cases)). *See also United States v. Nguyen*, No. 03 Cr. 734 (JPC), 2023 WL 8368855, at *6 (S.D.N.Y. Dec. 4, 2023).

## C. Release Now Would Be Inconsistent With the Section 3553(a) Factors

Even if Khan had demonstrated one or more extraordinary and compelling reasons for release—which he has not done—the Section 3553(a) factors strongly counsel against it. *See, e.g.*, *United States v. Monsanto Lopez*, No. 16 Cr. 643-1 (NRB), 2020 WL 2555305, at *1 (S.D.N.Y. May 20, 2020) (even if defendant could show extraordinary and compelling circumstances, section 3553(a) factors required denial); *United States v. Garcia*, No. 16 Cr. 719-2 (RJS), 2020 WL 2539078, at *2 (S.D.N.Y. May 19, 2020) (same); *United States v. Reese*, No. 12 Cr. 629 (VM), 2020 WL 2554381, at *2 (S.D.N.Y. May 20, 2020) (same).

The defendant engaged in a years' long, global fraud scheme. He knowingly took millions of dollars from others with no intent to return the funds. To promote and conceal his fraud, the defendant impersonated his own attorney. When he got caught, the defendant fled, staying at a resort for several years until he was forced to return to the United States. And when he was finally forced to face justice, Khan showed little remorse, as the Court noted and observed at sentencing.

Honorable Paul A. Engelmayer
October 4, 2024
Page 6


**III.    Conclusion**

    For the foregoing reasons, Khan's motion should be denied.

              Respectfully submitted,

              DAMIAN WILLIAMS
              United States Attorney

         By: s/ Nicholas W. Chiuchiolo
              Nicholas W. Chiuchiolo
              Assistant United States Attorney
              (212) 637-1247