UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

-v-

OMAR KHAN,

Defendant.

20 Cr. 117 (PAE)

OPINION & ORDER

---

PAUL A. ENGELMAYER, District Judge:

This decision resolves a *pro se* motion by defendant Omar Khan for compassionate release from Federal Medical Center ("FMC") Lexington, pursuant to 18 U.S.C. § 3582(c). For the reasons that follow, the Court denies the motion.

## I. Procedural Background

On March 28, 2024, Khan pled guilty to Count Two of the superseding Indictment, which charged him with aggravated identity theft, in violation of 18 U.S.C. §§ 1028A(a)(1) and 1029A(B). Dkt. 25. That charge, and a substantive wire fraud offense with which Khan was also charged, arose from an approximately four-year fraud scheme in which Khan had solicited wealthy investors to participate in a series of purported ventures involving the wine business. The scheme netted Khan some $9.5 million in investor funds, the vast majority of which went unrepaid. *See* Dkt. 31 ("PSR") ¶¶ 11–23. In the aspect of the scheme that supported the aggravated identity theft count, Khan impersonated his own attorney in emails to the victim investors in order to promote and conceal his fraudulent scheme. *Id.* at 22.

On June 10, 2024, the Court sentenced Khan to a mandatory two-year sentence. *See* Dkt. 38 ("Sent. Tr."). The Court noted that, although the parties' abbreviated sentencing submissions left the Court unable to state what Khan's sentence would have been had a two-year

sentence not been mandatory, given the seriousness and scale of his admitted fraud scheme, Khan "appear[ed] to be very, very, very, very fortunate that there is a two-year ceiling on the sentence that the Court may impose." *Id.* at 26.

On September 23, 2024, Khan, now *pro se*, moved for a reduction of sentence, pursuant to 18 U.S.C. § 3582(c). Dkt. 40 ("D. Mem."). On October 4, 2024, the Government filed an opposition. Dkt. 42 ("G. Mem."). On November 19, 2024, Khan, in support of the motion, filed a "proposed release plan." Dkt. 45. On December 11, 2024, the Government filed a letter attaching a letter from a victim of Khan's fraud scheme who opposed Khan's early release. Dkt. 46.

## II. Discussion

### A. Standards Governing Compassionate Release Motions

"[U]pon motion of the defendant," and "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility," the Court may reduce such defendant's sentence if it finds that "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A). The defendant bears the burden of proving he is entitled to compassionate release. *See United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992) ("If the defendant seeks decreased punishment, he or she has the burden of showing that the circumstances warrant that decrease." (citation omitted)); *see also, e.g., United States v. Clarke*, No. 9 Cr. 705, 2010 WL 4449443, at *1 (S.D.N.Y. Oct. 29, 2010).

Originally, § 3582(c)(1)(A) did not permit defendants to initiate compassionate release proceedings; it required the BOP to seek such release on their behalf. *See United States v.*

*Phillibert*, 557 F. Supp. 3d 456, 459 (S.D.N.Y. 2021). However, "[a]s part of the First Step Act of 2018, Congress authorized courts to reduce a term of imprisonment upon motion by a defendant." *United States v. Amato*, 48 F.4th 61, 63 (2d Cir. 2022) (per curiam).

Although Congress tasked the Sentencing Commission with identifying the circumstances that are sufficiently extraordinary and compelling to justify a reduction in sentence, *United States v. Brooker*, 976 F.3d 228, 232 (2d Cir. 2020) (citing 28 U.S.C. § 994(t)), before November 1, 2023, the Sentencing Commission's only guidance on this point had been promulgated prior to the enactment of the First Step Act. This guidance thus applied only to a "motion of the Director of the Bureau of Prisons," *see* U.S.S.G. § 1B1.13 (historical note), and not "to compassionate release motions brought by defendants," *Brooker*, 976 F.3d at 236; accordingly, the Second Circuit held in 2020, this guidance "[could not] constrain district courts' discretion to consider whether any reasons [were] extraordinary and compelling" in such cases, *id. See also id.* at 237 ("Neither Application Note 1(D), nor anything else in the now-outdated version of Guideline § 1B1.13, limits the district court's discretion."). Thus, through November 1, 2023, when assessing a motion brought by an imprisoned defendant and not the BOP, a district court was not constrained by U.S.S.G. § 1B1.13's enumeration of extraordinary and compelling reasons and could "consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before [it] in motions for compassionate release." *Id.* at 237.

Effective November 1, 2023, however, the Sentencing Commission amended the Guidelines to also cover defendant-initiated petitions. *See generally* U.S. Sent'g Comm'n, Amendments to the Sentencing Guidelines, 88 Fed. Reg. 28,254 (effective Nov. 1, 2023). The

3

amended guidance from the Commission as to what constitutes extraordinary and compelling reasons now controls the analysis of a compassionate release petition, however initiated.

The Commission's updated guidance identifies six circumstances that, singly or in combination, may so qualify. U.S.S.G. § 1B1.13(b). These are:

- *Medical circumstances of the defendant.* In addition to previously recognized circumstances such as a defendant suffering from a terminal illness or a serious medical condition. U.S.S.G. § 1B1.13(b)(1)(A)–(B), the amended guidelines direct courts to consider whether the defendant is "suffering from a medical condition that requires long-term or specialized medical care" that is not being provided in prison and without which the defendant is at risk of serious health deterioration or death, *id.* § 1B1.13(b)(1)(C), or is held at a facility affected by or at imminent risk of being affected by an outbreak of infectious disease or other "ongoing public health emergency declared by the appropriate federal, state, or local authority," where "due to personal health risk factors and custodial status," the defendant is at a greater risk of severe complications upon exposure, and where "such risk cannot be adequately mitigated in a timely manner." *Id.* § 1B1.13(b)(1)(D). This factor was informed by compassionate release decisions coming out of the COVID-19 pandemic. *See* U.S. Sent'g Comm'n, Guidelines Manual 2023: Supplement to Appendix C at 206 (Nov. 1, 2023).

- *Age of the defendant.* Coupled with a "deterioration in physical or mental health corresponding with the aging process as well as the portion of the original sentence served at the time of a compassionate release motion, this may support sentence reduction. U.S.S.G. § 1B1.13(b)(2).

- *Family circumstances of the defendant.* Where the defendant is the "only available caregiver" for an immediate family member, this may support a sentence reduction. *Id.* § 1B1.13(b)(3).

- *Victim of abuse in custody.* Where the defendant while in custody on the sentence in question was a victim of sexual abuse, or physical abuse resulting in serious bodily injury "committed by, or at the direction of, a correctional officer, an employee or contractor of the Bureau of Prisons, or any other individual who had custody or control over the defendant," and the misconduct was "established by a conviction in a criminal case, a finding or admission of liability in a civil case, or a finding in an administrative proceeding," this may support a sentence reduction. *Id.* § 1B1.13(b)(4).

- *Catchall provision.* Where a defendant presents "any other circumstance or [a] combination of circumstances" that themselves or with the above circumstances "are similar in gravity" to those above, such may support sentence reduction. *Id.* § 1B1.13(b)(5). The Commission "rejected a requirement that 'other reasons' be similar in nature and consequence to the specified reasons. Rather, they need be similar only in gravity[.]" U.S. Sent'g Comm'n, Guidelines Manual 2023:

4

Supplement to Appendix C at 207 ("[T]he Commission continues to believe . . . that judges are in a unique position to determine whether the circumstances warrant a reduction. Guidance beyond that provided in the amended policy statement regarding what circumstances or combination of circumstances are sufficiently extraordinary and compelling to warrant a reduction in sentence is best provided by reviewing courts[.]" *Id.* (cleaned up).

- *Unusually long sentence plus changes in law.* Where "a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances." U.S.S.G. § 1B1.13(b)(6).

Finally, even if extraordinary and compelling reasons are present, the Court must also assure itself that release is consistent with "the factors set forth in section 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A).

## B. Discussion

Khan's motion is based on his claim that his release is necessary to enable him to care for his 92-year-old mother. He states that, beginning before he entered prison, he was her sole caretaker, "directing [her] care while she is in a care facility in Pakistan." D. Mem. at 2. He states that he "is her only advocate and acts as the family's interpreter while interacting with the care team in Pakistan." *Id.* However, he states, "[d]ue to the worsening conditions his mother is experiencing in Pakistan," the family wishes her to move to the family home in New York, which requires an immediate family member who speaks Urdu, and "[t]he only person capable of handling this immense task is her only child, Mr. Khan." *Id.* He adds: "A reduction to time served would allow him to care as [her] sole care provider." *Id.*

The Court is sympathetic to Khan's mother, both for the medical challenges she faces and for the undoubtedly unwelcome development of having a son incarcerated for a multi-million-

5

dollar investment fraud. The Court, however, rejects Khan's bid for early release on the ground of his mother's care as baseless, indeed frivolous, for two independent reasons. First, Khan falls far short of showing extraordinary and compelling reasons for his early release. Second, such release is inconsistent with—it would badly offend—the assembled § 3553(a) factors.[1]

### 1. Extraordinary and Compelling Reasons

Khan claims that he is the only person able to care for his elderly mother, who is currently being treated in a Pakistani nursing home for high blood pressure, anxiety, arthritis, and high cholesterol. However, Khan's claim to be essential to her care—which did not deter him from risking his liberty in committing a brazen fraud—is an *ipse dixit*. It is largely unexplained and unsubstantiated. The need to care for a defendant's parent "may, in certain circumstances, warrant a finding that an extraordinary and compelling reasons exists," but the Guidelines require "[t]he incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent." U.S.S.G. § 1 B1.13(b)(3)(C). And courts "generally require a showing of evidence from several sources indicating that the defendant is the only available caregiver for a family member in dire conditions." *United States v. Lindsey*, No. 13 Cr. 271, 2021 WL 37688, at *3 (S.D.N.Y. Jan. 4, 2021) (citation omitted).

Khan has not made that showing here, for multiple reasons.

First, he does not explain why the nursing home in Pakistan where his mother is currently cared for is inherently incapable of meeting her medical needs. Second, even assuming that that facility were unable to do so, Khan does not explain why he is the only possible caregiver and

---

[1] The Government notes that Khan did not appeal the BOP's denial, on August 20, 2024, of his request that it make a request for compassionate release on this ground, and thus appears to have failed to exhaust his administrative rights before making this motion. G. Mem. at 4. Because Khan's motion fails on other grounds, the Court does not have occasion to reach this argument.

6

why another relative (*e.g.*, his spouse, *see* PSR ¶ 39) or another person in the United States or Pakistan who is close to his mother is incapable of caring for her. *See United States v. Ortiz*, No. 18 Cr. 476-02, 2022 WL 16962291, at *2 (S.D.N.Y. Nov. 16, 2022) (denying compassionate release because "Defendant does not argue that his father is completely unable to care for himself, nor does [he] contend that he is the only available caregiver for his father"); *United States v. Ayala*, No. 21 Cr. 111, 2022 WL 2334041 (S.D.N.Y. June 27, 2022) (denying compassionate release where defendant "d[id] not argue that he is the only available caregiver for his son"). Third, Khan's profession that his in-person presence is needed to assure his mother's able care, and his personal commitment to her care, is in some tension with his having lived outside of Pakistan for the past 22 years—in the United States from 2002 to 2019, and thereafter in Sri Lanka. *See* PSR ¶ 39. And, fourth, Khan's profession that he is up to the physical challenge of caring for his mother is in great tension with his repeated complaints in the months between his extradition and sentencing about his immobility and the great pain he experiences while moving, stemming from his back injuries, nerve pain, diabetes, and obesity. *See* PSR ¶¶ 42–45; *see also* Dkts. 13 at 1–2 ("Mr. Khan has two fractures in his back . . . . [His] feet have swelled and are discolored, and he is experiencing worsening symptoms associated with neuropathy."); 14 at 1 (requesting neurological evaluation and spinal brace to treat Khan's "various medical conditions"), 15–16, 20–24, 27–30; Sent. Tr. at 29 ("[T]here were other factors in play here that would have pointed towards a lower sentence, most obviously your frail medical condition and the evident pain you are in, attending to your medical needs while in custody has indeed been a central subject of the intervening conferences in this case, most recently last week.").

7

Khan accordingly has not established extraordinary and compelling circumstances supporting compassionate release. *See, e.g.*, *United States v. O'Bryant*, No. 16 Cr. 317-3 (PAE), 2023 WL 8447995, at *5 (S.D.N.Y. Dec. 6, 2023) (denying compassionate release where defendant did not establish that his wife could not care for herself, that others could not assist her, and that, in part given his long absence in prison, he was in fact his wife's primary caregiver); *United States v. John*, No. 15 Cr. 208, 2020 WL 6581217, at *2 (S.D.N.Y. Nov. 10, 2020) (defendant's wife's "struggl[e] to care for their young children and his unwell and aging parents . . . d[id] not constitute an extraordinary and compelling reason to shorten his otherwise justly deserved sentence").

### 2. Section 3553(a) Factors

Even if his mother's medical needs presented an extraordinary and compelling basis for Khan's release, the § 3553(a) factors, considered in combination, overwhelmingly favor the sentence imposed. In particular, the Court's firm judgment is that the extraordinary gravity of Khan's financial crimes would make a sentence of under two years' imprisonment unthinkable, such that Khan's bid for early release is easily put aside.

At sentencing in June, the Court was obliged to impose that sentence, as such was mandatory for the one count (aggravated identity theft) to which the plea agreement obliged Khan to plead guilty. *See* Dkt. 25. It was not the Court's province to second-guess the Government's decision to forego the wire fraud count charged in the original Indictment, the ample factual support for which the PSR set out at length. *See* PSR ¶¶ 9–23; *see also* Sent. Tr. 4–6 (defense, objecting only to minor points in PSR).[2]

---

[2] As the Court noted at sentencing, Khan's physical frailty no doubt informed the Government's decision to enter into a plea agreement permitting a plea to only the aggravated identity theft count. Sent. Tr. at 29–30.

8

But the Court's remarks at sentencing should have left no doubt either of the gravity of his offense or that, had Khan's exposure not been thus capped, a far longer sentence would almost certainly have been imposed. While noting that the mandatory sentence had resulted in the Court's receiving truncated sentencing submissions, the Court stated the following:

> Based on the facts stipulated to in the presentence report, you appear to [have] be[en] very, very, very, very fortunate that there is a two-year ceiling on the sentence that the Court may impose. Were it not for that cap, the facts of your crime . . . would have favored a much, much higher sentence. And that is because that the identity theft here, which entailed adopting a fictitious lawyer's identity and using it in e-mails to a victim, . . . was in the service of very substantial wire fraud scheme.
>
> And I am referencing here the scheme set out at paragraphs 9 through 23 of the [PSR]. In brief, these describe your solicitation of investments from multiple victims[,] on the representation that the money would be used to invest in certain wine and dinner events for wealthy people. It recounts at length your dealings with four of these people. It states that various representations made at the outset of these solicitations were false and it describes the increasingly far-fetched explanations . . . you gave to victims thereafter, including when they were demanding money from you. Your false representations in midstream appear to have been intended to lull the victims into complacency. In the end, the victims did not get their money back, let alone the profit you had held out to them as the inducement for investing. Together, they lost millions of dollars. The restitution order identifies [a] double-digit number of people owed together something like $6.7 million.
>
> And the victim impact statements I have received underscore the human cost of the offense. . . . [One victim stated:] "Despite the embarrassment and the cost to my reputation, I and the other plaintiffs in this action"—reflecting the civil suit against you that tracks this case—"decided to seek justice against a man who gained our trust and wronged us deeply. There remain a number of my friends and colleagues who have too great a fear for the damage to their reputation to speak out against Mr. Khan publicly." . . . He goes on to say that Mr. Khan never admitted to any wrongdoing or showed any signs of remorse since his judgment. . . .
>
> Given the scale of your offense and the number of victims, had you pled guilty to Count One, which charged the offense of wire fraud, the [S]entencing [G]uidelines here would likely have called for a sentence well north of five years' imprisonment. Even crediting you for the acceptance of responsibility reflected in your very prompt guilty plea, which as I said came very quickly after your arrival in the U.S. from Sri Lanka and your arraignment, and the [§] 3335(a) factors, of the needs for just punishment and to promote respect for the law, at a minimum, would

9

> have strongly favored a sentence along these lines. Depending on the facts presented in a full sentencing submission, all of the [§] 3553(a) factors considered, . . . [including] specific deterrence, [and] protection of the public . . . might . . . have heavily favored the same result . . . .
>
> Given the underdeveloped factual record, I can't reliably judge what the outcome would have been had all the facts been brought before me and had I had a range of motion here.
>
> I do note, though[], that persons who have committed frauds of this scale here, in general, have tended to receive materially higher sentences than you will receive today. And so, if you have not thanked Mr. Dalack or the Federal Defenders of New York for their effective advocacy on your behalf, you should do so.

Sent. Tr. 26–30.

The Court firmly stands by that considered assessment today. Even crediting as true Khan's claim that his early release would stand to benefit his ailing mother, his release even one day earlier than as sentenced would offend the interests in just punishment and assuring that the sentence fit the crime, and be incompatible with the § 3553(a) factors, considered as a whole. The Court accordingly denies Khan's motion for compassionate release. *See, e.g., O'Bryant*, 2023 WL 8447995, at *6 (denying compassionate release even if wife's "physical needs presented an extraordinary and compelling reason for release, [because] his release would be inconsistent with the § 3553(a) factors, viewed as a whole"); *John*, 2020 WL 6581217, at *3 (denying compassionate release "[e]ven if John had established that his health, or his family circumstances, or some other reason . . . augured in favor of granting his release, the sentencing factors set forth at 18 U.S.C. § 3553(a) would nonetheless counsel against it"); *see also* 18 U.S.C. § 3582(c)(1)(A) (release permissible only if compatible with § 3553(a) factors); *see, e.g., United States v. Butler*, No. 18 Cr. 834-10 (PAE), 2022 WL 17968627, at *3 (S.D.N.Y. Dec. 27, 2022) (§ 3553(a) factors, considered "in totality," disfavored early release); *United States v.*

*Wright*, No. 15 Cr. 445-3 (PAE), 2022 WL 134870, at *5 (S.D.N.Y. Jan. 13, 2022) (similar); *United States v. Hope*, 464 F. Supp. 3d 646, 650 (S.D.N.Y. 2020) (similar).

## CONCLUSION

For the reasons stated, the Court denies Khan's motion for compassionate release. The Clerk of Court is respectfully directed to terminate the motion pending at Docket 40 and to mail a copy of this decision to Khan at the following address:

Omar Khan
Fed. Reg. No. 02308-511
FMC Lexington
P.O. Box 14500
Lexington, KY 40512

SO ORDERED.

*Paul A. Engelmayer*
PAUL A. ENGELMAYER
United States District Judge

Dated: December 18, 2024
New York, New York